UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALESDRIVERS, HELPERS AND DAIRY EMPLOYEES, LOCAL UNION NO. 683, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PASHA AUTOMOTIVE SERVICES,<br><br>　　　　　　　　　　　Defendant. | Case No.: 21-CV-1888 JLS (DEB)<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS AND (2) DENYING AS MOOT PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF Nos. 6, 9) |

Presently before the Court is Defendant Pasha Automotive Services' Motion to Dismiss ("MTD," ECF No. 9). Plaintiff Salesdrivers, Helpers and Dairy Employees, Local Union No. 683, International Brotherhood of Teamsters ("Plaintiff" or "Union") filed an Opposition to the Motion ("Opp'n," ECF No. 25), and Defendant filed a Reply in support of the Motion ("Reply," ECF No. 27). Additionally, Plaintiff filed an Application for Temporary Restraining Order ("TRO," ECF No. 6), to which Defendant filed an Opposition (ECF No. 19), Plaintiff filed a Reply (ECF No. 20), and Defendant filed a Sur-Reply (ECF No. 24). The Court heard oral argument on January 20, 2022, and these

matters were thereafter taken under submission.  ECF No. 28.  For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES AS MOOT** Plaintiff's Motion for Temporary Restraining Order.

## BACKGROUND[1]

Plaintiff is a labor union that represents Defendant's employees who work at Defendant's National City and Otay Mesa, California, facilities.  *See* ECF No. 1 ("Compl.") ¶ 1.  The relationship of the Parties is governed by a Collective Bargaining Agreement ("CBA") that sets forth a grievance and arbitration procedure as the exclusive means for addressing the Parties' disputes under the CBA.  *See generally* Ex. 1, ECF No. 1 ("CBA").[2]

The conflict here centers around the Union designating Ernesto Flores, a Union member and an employee of Defendant, as an authorized business representative for the Union.  *See* Compl. ¶ 11.  Article IV, Section 3 of the CBA provides that "[t]he authorized business representative of the Union shall have access to the property of the Employer for the transaction of Union business."  CBA art. IV, § 3.  Article IV, Section 1 of the CBA also states that "[a]ccredited representatives of the Union shall have access during the business hours to the premises of the Employer where members of the bargaining unit

---

[1] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of Defendant's Motion to Dismiss.  *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may take into account the Parties' pleadings, any documents physically attached to those pleadings or incorporated by reference therein, and any documents properly subject to judicial notice.  *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  Plaintiff attached three exhibits to the Complaint: the Parties' CBA (Ex. 1), the Union's letter to Defendant designating Mr. Flores as the authorized business agent (Ex. 2), and Defendant's response refusing Mr. Flores access to Defendant's facilities (Ex. 3).  "Nonetheless, in deciding a motion for preliminary injunction—unlike a motion to dismiss—the Court is not limited solely to the pleadings and may consider affidavits or declarations along with other evidence submitted by the parties."  *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1024 (S.D. Cal. 2006) (citing Fed. R. Civ. P. 65; *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)), *aff'd*, 393 F. App'x 513 (9th Cir. 2010).  The Court is guided by these legal principles in its Analysis.

work, providing that no conferences and meetings between employees and Union representatives shall in any way hamper or obstruct the normal flow of work." CBA art. IV, § 1.

Prior to Mr. Flores's designation as a business representative, he participated in a Union strike in March 2020.[3] Compl. ¶ 13. During the strike, Defendant alleges that Mr. Flores "verbally harassed and bullied" Defendant's other employees who were working during the strike. Ex. 3, ECF No. 1 at 38. According to Defendant, Mr. Flores "yell[ed] profanity at [the employees who were working at the facility during the strike] and even tried to prevent them from coming into [Defendant's] facility at all." *Id.* Additionally, Defendant claims that Mr. Flores "posted videos on social media which [Defendant's] employees understood was done to try to intimidate them." *Id.* Plaintiff claims the strike was lawful, and Defendant did not terminate or discipline Mr. Flores based on his behavior during the strike. *See* Compl. ¶¶ 13–16. Defendant did, however, ban Mr. Flores from accessing its facilities. *Id.* ¶ 11; *see also* Ex. 3. Mr. Flores's job was filled during the strike, and he was placed on a recall list. *See* Compl. ¶ 15.

In September 2021, Plaintiff informed Defendant by letter that Mr. Flores was an authorized business representative of the Union pursuant to the CBA. *Id.* ¶ 10; *see also* Ex. 2, ECF No. 1 at 37. The Union added Mr. Flores as a business representative "in addition" to Lee Fletcher, Plaintiff's previous business representative. Ex. 2. Defendant refused Mr. Flores access to the property based on his behavior during the March 2020 strike. Ex. 3. Mr. Fletcher has continued to access Defendant's facilities in his role as a business representative for the Union.

Plaintiff filed its Complaint on November 8, 2021, seeking injunctive relief to allow Mr. Flores access to Defendant's property as an authorized business representative. Plaintiff's Application for a Temporary Restraining Order seeking the same relief

---

[3] The Complaint alleges that the strike took place in March 2019; however, Plaintiff's Motion for Temporary Restraining Order and all subsequent briefing states the strike took place in March 2020. *Compare* Compl. ¶ 13, *with* TRO at 2. This discrepancy does not affect the Court's analysis.

followed. Subsequently, Defendant filed a Motion to Dismiss based on lack of subject matter jurisdiction and failure to state a claim.

## MOTION TO DISMISS

Plaintiff's Complaint and its Motion both raise the same issue—whether the Court can enjoin Defendant from refusing Mr. Flores access to its facilities as a Union business representative pending the outcome of grievance and arbitration proceedings. *See* Compl. at 5–6 (Prayer for Relief); *id.* ¶¶ 20–22; TRO at 6–9. As the Complaint seeks no relief beyond the Motion, the Court need not address them separately. The Court, consequently, addresses only Defendant's Motion to Dismiss under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. *See* MTD at 1, 11.

### I. Legal Standards

#### A. Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotations omitted). Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

#### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil

Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655,

///

658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II.     Analysis

Defendant argues that dismissal is required in this case because the Norris–LaGuardia Act divests this Court of jurisdiction, and Plaintiff cannot demonstrate that the "labor dispute" at issue here involves unlawful acts that would cause substantial and irreparable harm to the Union.[4]  MTD at 1.  In response, Plaintiff argues that this action falls into an exception to the Norris–LaGuardia Act's jurisdictional bar, and this Court has authority to issue a status quo injunction to enjoin Defendant pending arbitration on the merits of the Parties' dispute.  Opp'n at 6.

The Norris–LaGuardia Act ("NLGA") limits the jurisdiction of federal courts to issue injunctive relief in cases involving labor disputes.  29 U.S.C. § 104.  Through the NLGA, Congress sought "to protect the rights of laboring men [and women] to organize and bargain collectively and to withdraw federal courts from a type of controversy for which many believed they were ill-suited[.]"  *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 n.7 (1960).  The Parties do not dispute that this controversy is a labor dispute within the meaning of the NLGA.  MTD at 6–7; Opp'n at 3; *see also* 29 U.S.C. § 113(c) (defining "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee").  Therefore, the Court must examine whether this controversy falls within an exception to the jurisdictional restrictions of the NLGA.

Section 301 of the Labor-Management Relations Act ("LMRA") offers one such exception.  The LMRA grants federal courts jurisdiction over suits alleging breach of

---

[4] Defendant also argues that the Labor-Management Relations Act preempts Plaintiff's breach of contract claim, MTD at 1; however, Plaintiff's Complaint does not allege a state law claim for breach of contract. *See generally* Compl.  Therefore, the Court will not address this argument.

6

21-CV-1888 JLS (DEB)

1  private labor agreements. *See* 29 U.S.C. § 185(a); *SEIU v. St. Vincent Medical Center*, 344
2  F.3d 977, 983 (9th Cir. 2003). The LMRA became "the vehicle for enforcing the
3  fundamental federal labor policy favoring recourse to private arbitration." *Niagara Hooker*
4  *Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir. 1991) (citing *Textile*
5  *Workers Union v. Lincoln Mills*, 353 U.S. 448, 455 (1957)). To accommodate the NLGA
6  and LMRA's competing mandates, "the Supreme Court carved out a 'narrow' exception to
7  the NLGA's proscription against enjoining labor disputes where an injunction is necessary
8  to protect the integrity of the arbitration." *Nat'l Ass'n of Letter Carriers, AFL-CIO v.*
9  *United States Postal Serv.*, 419 F. Supp. 3d 127, 132 (D.D.C. 2019) (citing *Boys Markets,*
10 *Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 253–55 (1970)). Therefore, courts
11 may enjoin conduct in a labor dispute to preserve the integrity of arbitration or when faced
12 with the threat of imminent, irremediable harm. *See generally Buffalo Forge Co. v. United*
13 *Steelworkers*, 428 U.S. 397 (1976); *Boys Markets, Inc.*, 398 U.S. 235.

14  Specifically, injunctive relief is available in a labor dispute when:

> (1) the collective bargaining agreement contains a mandatory arbitration provision; (2) the underlying dispute is arbitrable; (3) the party seeking arbitration is prepared to arbitrate; and (4) issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether the breaches have caused or will cause irreparable injury to the Union; and whether the Union will suffer more from the denial of an injunction than will the Employer from its issuance.

22 *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. S.F. Newspaper Agency*,
23 89 F.3d 629, 632 (9th Cir. 1996) (citing *Boys Markets*, 398 U.S. at 254). Instances where
24 a union seeks to enjoin an employer pending arbitration are commonly termed "reverse
25 *Boys Markets*" situations. *See id.* The Ninth Circuit has explained that, under *Boys*
26 *Markets* and *Buffalo Forge*, a reverse *Boys Markets* injunction may be appropriate where
27 "an employer makes changes in areas which are subject to the grievance-arbitration
28 procedure, and the union seeks to enjoin the employer from making the changes until the

grievance is resolved through arbitration." *Id.* However, a union may be entitled to a status quo injunction pending arbitration "only if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction." *Id.* at 634 (quoting *Niagara Hooker Emp. Union*, 935 F.2d at 1378); *see also Buffalo Forge Co.*, 428 U.S. at 407 (permitting courts to enjoin conduct that "would interfere with and frustrate the arbitral process"); *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir. 1988) ("[C]ourts should intervene only when necessary to preserve the mechanisms of peaceful arbitration or when circumstances of imminent, irremediable harm threaten.").

The Parties agree that the first three *Boys Markets* factors are met. Hr'g Tr. 4:23–5:1; 11:23–25. The CBA contains a mandatory arbitration provision, *see* CBA art. VI, the underlying dispute is arbitrable, and Plaintiff is prepared to arbitrate. Therefore, the only issue before the Court is whether Plaintiff has sufficiently alleged that an injunction is warranted under the ordinary principles of equity outlined above. Plaintiff alleges that Defendant's refusal to allow Mr. Flores on the business premises interferes with Union internal affairs. Compl. ¶ 22. These allegations do not rise to the level of irreparable injury, and Plaintiff has not alleged that an injunction is necessary to maintain the status quo pending resolution of this matter in arbitration.

Instances where courts have found irreparable injury and issued a reverse *Boys Markets* injunction are distinguishable from the present case. These cases typically involve an employer relocating or closing an employment site or revoking healthcare benefits for a number of employees. *See, e.g.*, *IBEW Local 2327 v. Consol. Commc'ns of N. New England Co., LLC*, No. 2:19-CV-265 (NT), 2019 WL 7546601 (D. Me. Aug. 23, 2019) (enjoining sale of a business unit that employed union members pending arbitration); *Constellium Rolled Prods. Ravenswood, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 2:18-CV-1404 (TEJ), 2018 WL 6329748 (S.D. W. Va. Dec. 4, 2018) (enjoining termination of health insurance coverage pending arbitration); *Int'l Union v. CONSOL Energy, Inc.*, 243 F. Supp. 3d 755

(S.D. W.Va. 2017) (same); *Int'l Brotherhood of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 239 F. Supp. 3d 906 (D. Md. 2017) (enjoining relocation of operations pending arbitration). However, some courts have declined to issue reverse *Boys Markets* injunctions in similar circumstances. *See Local Union No. 884, United Rubber, Cork, Linoleum & Plastic Workers v. Bridgestone/Firestone*, 61 F.3d 1347, 1354 (8th Cir. 1995) (holding diminution in scope of health coverage does not constitute irreparable harm); *Aluminum Workers Int'l Union Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982) ("[W]e hold that loss of employment, even if occasioned by employer action which is subject to arbitration, is not irreparable harm and will not support a claim by the union for injunctive relief."). At the hearing on the present Motion, Plaintiff conceded that there are no instances where a court has issued a reverse *Boys Markets* injunction to enjoin an analogous dispute regarding internal union affairs. Hr'g Tr. 10:2–7. Although a facility closure or loss of employee health benefits may present cases of imminent, irremediable harm, these disputes are distinct from the present action.

Defendant has refused to grant facility access to Plaintiff's preferred business representative, but Mr. Fletcher has continued to access the facility and act in his role as authorized business representative for the Union. *See* Ex. 2. Defendant refusing one individual access to its facilities does not constitute irreparable harm. Therefore, the harm Plaintiff has alleged in its Complaint is insufficient to overcome the NLGA's general prohibition against the issuance of injunctive relief in labor disputes.

Additionally, Plaintiff has not sufficiently alleged that an injunction is necessary to preserve the integrity of arbitration. *Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 286 (7th Cir. 1981) ("An injunction in aid of arbitration is appropriate . . . only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration."). Plaintiff claims it will suffer harm if the Union is not allowed freedom to select its representative at Defendant's facilities; however, this injury does not threaten the integrity of the arbitration process itself. *See Indep. Oil & Chemical Workers, Inc.*, 864 F.2d at 930–31 ("[T]he courts must not interfere unless the

actions taken or threatened by one of the parties would render the outcome of any arbitration which might follow meaningless."). If Plaintiff is successful at arbitration, the Union will have suffered a brief period of time without its preferred business representative on site at the facility; however, Plaintiff would then be able to instate Mr. Flores as its authorized business representative.

Even if the Court overlooked these issues that are fatal to Plaintiff's claim, it is not clear that issuing an injunction in this instance would maintain the status quo. Mr. Flores has never served as the Union's authorized business representative, and Defendant banned Mr. Flores from its facilities in March 2020. Defendant has not allowed Mr. Flores on site since that incident. To issue an injunction in this case would force Defendant to change a policy against Mr. Flores that the employer has maintained for several years. Additionally, such a ruling would instate Mr. Flores in a role in which he has never previously served. To do so would improperly insert the Court into a labor dispute, which, pursuant to the NLGA, the Parties must resolve through the grievance-arbitration procedure in the CBA.

Plaintiff's allegations do not fit within the narrow exception to the Norris–LaGuardia Act's anti-injunction provisions. Therefore, the Court concludes that injunctive relief is not available to Plaintiff and **GRANTS** Defendant's Motion to Dismiss.

## TEMPORARY RESTRAINING ORDER

The Court has already determined that Plaintiff's Complaint and Motion for Temporary Restraining Order seek the same relief, and the allegations in Plaintiff's Complaint are insufficient to overcome the Norris–LaGuardia Act's anti-injunction provisions. Therefore, the Court **DENIES AS MOOT** Plaintiff's Motion for a Temporary Restraining Order.

## CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 9) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint. Furthermore, the Court **DENIES AS MOOT** Plaintiff's Motion for a Temporary Restraining Order (ECF No. 6). Plaintiff may file an amended complaint <u>within 30 days</u> of the electronic

docketing of this Order. Should Plaintiff fail to do so, the Court will enter a final order dismissing and closing this civil action based on Plaintiff's failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: February 16, 2022

Hon. Janis L. Sammartino
United States District Judge